# MOORE PRINTING TYPEWRITER COMPANY *v.* NATIONAL SAVINGS & TRUST COMPANY.

---

### EQUITY; APPEALS; WAIVER; INTERPLEADER.

1. Where a decree recited that it should be void if the defendants, within ten days from its date, should apply for and obtain an injunction against the complainants, and the defendants entered an appeal from the decree on the same day it was passed, a motion by the appellee to dismiss the appeal, on the ground that the decree did not become a final decree until the expiration of such ten days, was denied, as the prosecution of the appeal constituted a waiver by the defendants of their right to avail themselves of the condition contained in the decree, and had the effect of making the decree final and absolute.

2. An essential foundation of the equity of interpleader is that the party seeking the relief must not be under an independent or special liability to one of the claimants. (Following *Richardson* v. *Belt*, 13 App. D. C. 200.)

3. A bill of complaint is not a bill of interpleader, where the complainant is a trustee under an agreement with a majority of the stockholders of a certain corporation to hold and vote the stock, giving trustees' certificates to the stockholders, and, by the bill of complaint, in accordance with the right reserved to it by the agreement, seeks to be relieved as trustee, and to have a new trustee chosen by a majority of the stockholders, substituted in its place; although the bill, in addition to making such stockholders defendants, makes certain other parties defendants who assert claims to the stock antagonistic to the stockholders, and also asks instructions as to the manner in which it shall turn over the stock to the new trustee, in view of the conflicting claims to the stock.

No. 1854. Submitted April 20, 1908. Decided June 2, 1908.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia in a suit in equity by a trustee, seeking to be relieved of its trust, and asking for instructions of the court.                    *Affirmed.*

The COURT in the opinion stated the facts as follows:

This is an appeal from a decree entered in the supreme court of the District of Columbia in an action brought by appellee, National Savings & Trust Company, plaintiff below, to be relieved from a certain trust agreement, and to be permitted to surrender stock held by it in trust to a new trustee. For convenience, the parties will be referred to as plaintiff and defendants in the same relation they sustained in the court below.

On April 26, 1906, an agreement was made by Bessie P. Cornwall and others, as parties of the first part, with the plaintiff, as the party of the second part. The agreement, among other things, stipulated that its object was to hold together in trust a majority of the corporate stock of the American Planograph Company in order to secure a safe and prudent management of the affairs of the company. The parties of the first part were to transfer to the plaintiff 35,005 shares of the capital stock of said company for the purposes set forth in the agreement. Plaintiff issued to each person transferring stock to it, a trustee's certificate, which recited the number of shares deposited by him, and that the holder of such certificate was entitled to an equitable interest in the 35,005 shares, equivalent to the number of shares deposited by him; and that, on or after March 31, 1911, the holders of such certificates should be entitled to a certificate for an equal number of shares of the stock of said company. It was also provided that, on March 31, 1911, the plaintiff should transfer on the books of the American Planograph Company the stock so held in trust, and deliver certificates thereof to each holder of the trust certificates. The agreement contained the usual conditions in such contracts, to the effect that the stock should be transferred on

the books of the company to plaintiff, and that plaintiff should vote the stock in the manner directed by the owners of a majority of the amount of the trustee's certificates; that a record should be kept of the shares deposited and the holders of certificates; that plaintiff should collect dividends and pay the same to the holders of the trustee's certificates, and that plaintiff should be compensated for its services in an amount stipulated in the agreement. The agreement also provided that, upon the resignation of plaintiff as trustee, the holders of a majority, in amount, of the trust certificates, should elect a trustee to fill the vacancy. The plaintiff assumed the trust under said agreement, and the stock to the full amount was turned over to it by the parties of the first part.

In addition to the above facts, the plaintiff, in its bill, alleged the performance of the agreement, the transfer to it of the 35,005 shares of stock, and the issue of the trustee's certificates therefor. It further alleged that it had notified the parties in interest, through whom it derived its position of trustee, of its desire to resign such position, and that, pursuant to its notice, the holders of a majority in amount of the trust certificates had appointed the New York Trust Company, of the city of New York, to be trustee under the agreement, in the place and stead of the plaintiff.

The plaintiff further alleged that, in suits brought by Cecil H. Moore and Julia B. Moore, respectively, injunctions had been granted restraining the plaintiff from removing the stock from the District of Columbia, and also that plaintiff had been served with notice by the Moore Printing Typewriter Company, Russell W. Montague, and George P. Montague to the effect that they claimed that a large part of the 35,005 shares of American Planograph Company's stock, held in trust by the plaintiff, was subject to a trust in their favor. The defendants named in the bill included the holders of the trustee's certificates issued by plaintiff, and also Cecil H. Moore, Julia B. Moore, the American Planograph Company, the Moore Printing Typewriter Company, Russell W. Montague, and George P. Montague. The relief demanded in the bill was "that the

complainant may be permitted to resign and retire from its said trust, and to surrender the shares of stock now held by it to a new trustee; and that the complainant may be instructed by the court as to the manner and form of transfer by it to its successor in said trust"

All the defendants, except the appellants, the Moore Printing Typewriter Company, and Russell W. and George P. Montague, filed a joint answer, in which they admitted substantially all the facts alleged in the bill, and consented that a decree might be entered relieving the plaintiff of the trust, and authorizing it to surrender the stock to the New York Trust Company, but denied the allegations in the bill that the plaintiff could not so transfer the stock without risk or liability of loss.

The Moore Printing Typewriter Company and Russell W. and George P. Montague filed answers in which they alleged, in substance, that, in January, 1900, and prior and subsequent thereto, the Moore Printing Typewriter Company, a corporation, either by itself, or through the agency of another corporation, the Linomatrix Company (nine tenths of the stock of which belonged to the Moore Printing Typewriter Company and its stockholders), owned all the inventions and patents for the United States, of the defendant, Charles T. Moore, together with all his future improvements thereon; that, thereafter, Moore entered into a conspiracy with the defendants, Henry L. Bryan and George R. Cornwall, for the purpose of acquiring for an inadequate sum the assets of the Moore Printing Typewriter Company and the Linomatrix Company, and, to that end, entered into a contract with Cornwall by which Moore engaged his services to Cornwall for the purpose of perfecting inventions relating to printing, and taking out the patents therefor, which inventions are alleged to be of the same character as those which Moore had already assigned to the Moore Printing Typewriter Company. It was further alleged in the answer that the American Planograph Company was formed for the purpose of carrying out this alleged fraudulent scheme, and that 26,831 shares of the stock of that com-

pany were issued to Moore, Cornwall, and Bryan, or their appointees, and that the stock so issued, or other stock issued in lieu of it, constituted the greater part of the 35,005 shares held in trust by the plaintiff.

Plaintiffs set the cause down for trial on bill and answer. On hearing, and before judgment, defendants, by leave of court, filed a cross bill. It was attempted, by means of this bill, to, in effect, restrain any performance of the trust, under the agreement, either by the plaintiff or its successors in trust; and to prevent any sale of the stock, except upon condition that the proceeds should be held subject to the order of the court. We cannot escape the conclusion that this was an attempt on the part of defendants to reap the benefits of an injunction without giving bond. The court, recognizing its inability to grant the prayer under the rules governing equity practice in that court, but apparently anxious to protect the rights of defendants, entered a conditional decree authorizing and directing the plaintiff to deliver to the New York Trust Company, as its successor in trust, all the certificates of stock in the American Planograph Company which it held by virtue of the agreement made between the holders of said stock and plaintiff as trustee, and to make such indorsement upon the certificates of stock held by it as may be required to enable its successor to take complete title to such certificates. It was further decreed that, upon compliance by the plaintiff with the decree of the court, it should be discharged from all liability to the defendants in respect to such certificates and this action, as trustee, under said agreement. This decree, however, was entered with a proviso to the effect that "this decree and order shall be void if, on or before the 23d day of December, 1907 (ten days from the date of the decree), the defendants, the Moore Printing Typewriter Company, Russell W. Montague, and George P. Montague, or one or more of said last-named defendants, by way of cross bill in this case, or by original bill in this court, as they may be advised, shall apply for and obtain a restraining order or injunction with undertaking and security as required by equity rule 42 of this court,

prohibiting such transfer of said certificates." The case is here on appeal from this judgment.

*Mr. Charles A. Keigwin* and *Mr. George P. Montague* for the appellants.

*Mr. J. J. Darlington* for the appellee the National Savings & Trust Company.

*Mr. A. S. Worthington, Mr. John J. Crawford,* and *Mr. J. K. M. Norton* for the other appellees.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

A motion was filed by plaintiff to dismiss this appeal for the reason that the judgment appealed from had not become final at the date the appeal was taken. The defendants took the present appeal on the same day that the order was entered, without waiting for the expiration of the ten days within which they were permitted to apply for a restraining order under the terms of the decree. It is insisted by counsel for plaintiff that this court is without jurisdiction to consider this appeal for the reason that the decree of the court below, by its terms, did not become final until the 23d day of December, 1907, ten days after the appeal was taken. It is urged that, on the date the appeal was taken, the purpose of the decree was subject to be defeated by the action of the defendants, and that the decree was of no effect whatever until the expiration of the ten days, when it would, by its terms, become absolute. It is well settled that an appeal will not lie from an interlocutory order, but we do not regard the decree before us as such an order. Here, the condition was one which was available only to the defendants, and, we think, it was within their power to either accept the condition which would have involved further proceedings in the trial court, or prosecute their appeal. Having adopted the latter course, it was equivalent to a

waiver of any further right to avail themselves of the condition contained in the decree, and had the effect of making the decree at once final and absolute.

It is urged by counsel for defendants that the bill filed by plaintiff in this cause is in effect a bill of interpleader. With this contention we cannot agree. In accordance with the privilege reserved to plaintiff in the trust agreement, plaintiff gave notice of its desire to retire from the trusteeship, and requested the depositors to select its successor. The depositors selected the New York Trust Company. Plaintiff was confronted with defendants' notice to the effect that they had a claim against the stock held by it. This proceeding was brought by the plaintiff, with notice of the conflicting claims, to be relieved of the trust, and instructed as to the manner in which it should turn over the stock to its successor, the New York Trust Company. No attempt was made by defendants to compel a distribution of the stock. They presented no objection to the transfer of the stock to the New York Trust Company, except to insist, in their cross bill, that plaintiff should not be relieved of any liability imposed upon it by virtue of said notice.

Plaintiff was not in a position to interplead. It was under a contract with the depositors of the stock, and it could not interplead them and defendants, who claimed under an antagonistic and alleged paramount title. Pom. Eq. Jr. 3d ed. secs. 1326, 1327. The rule applicable to this case, touching the question of interpleader, was announced by this court in *Richardson* v. *Belt,* 13 App. D. C. 200: "An essential foundation of the equity of interpleader is, that the party seeking the relief must not be under an independent or special liability to one of the claimants (Adams, Eq. 204; 3 Pom. Eq. Jur. sec. 1327). Where there is an independent liability of the party seeking the relief to one of the several defendants, arising out of the relations subsisting between them, or upon a special contract creating, for example, the relation of bailor and bailee, landlord and tenant, or creditor and debtor, there can be no interpleader, unless it be made to appear that others have acquired a claim of title or interest, derived under the said lia-

bility." The claim here asserted was not derived from the contractual relation existing between plaintiff and the depositors of the stock. The claim affected the title to the stock, for the return of which plaintiff was bound by its contract to one of the parties.

It is clear that defendants' claim affected vitally the depositors of the stock, who held plaintiff's certificates therefor. They could not be forced to try title upon the mere answer of defendants. If defendants were anxious to try title, which seems doubtful, they should have proceeded in a proper manner to have brought the holders of the trustee's certificates before the court. Having failed in this, if they were in danger of being damaged by the removal of the stock to New York,—which is not clearly apparent to us,—they could have accepted the invitation of the court, and asked for a restraining order to prevent the removal of the stock from the jurisdiction of the court. This they refused to do.

We fail to discover wherein the rights of defendants have been prejudiced by the action of the court below. There was no error. The decree is affirmed with costs, and it is so ordered.

*Affirmed.*

An appeal to the Supreme Court of the United States was allowed June 9, 1908.